## Case No. 16,339a.

### UNITED STATES v. SMITH.

[19 Niles, Reg. 319.]

District Court, D. Georgia. Dec., 1820.

PIRACY — SEIZURES DURING WAR — CONTRABAND GOODS—COMMISSION FROM GOVERNOR OF ORIENTAL REPUBLIC.

[1. The seizure of a French vessel by an armed ship whose officers held commissions from the governor of the Oriental Republic *held* not an act of piracy on their part, where the vessel seized was carrying arms and munitions of war to a port of the enemy.]

[2. A subordinate officer of an armed ship, acting in good faith, under a commission from

the governor of the Oriental Republic, *held* not guilty of an alleged act of piracy against a ship belonging to a neutral, where he entered a formal protest against the act.]

[3. One making seizures of Spanish and Portuguese vessels while in command of an armed ship in the patriot service *held* not guilty of piracy where he acted, in good faith, within the limits of a commission from the governor of the Oriental Republic, even though it turned out that such commission was forged.]

[4. In determining whether a person was guilty of piracy in making certain seizures while serving under a commission from a foreign government, the fact that he was an American citizen, and, as such, forbidden by the laws of the United States to serve against nations with whom they were at peace, can have no weight. His violation of the laws in question would subject him to the penalties prescribed thereby, but would have no tendency to make him guilty of piracy.]

Three several indictments for piracy, under the act of congress of 1819 [3 Stat. 510] were preferred against the defendant, John Smith, and returned by the grand jury. The first indictment charges that the defendant, on the high seas, sailing in a certain vessel, called the Columbia, or Arragonta, with force and arms did piratically and feloniously break and enter a certain schooner, name unknown, property of subjects of the king of France; that the said defendant did make an assault upon the mariners of the said schooner, put them in bodily fear, and did violently, feloniously. and piratically steal, take, and carry away one four inch hawser, value twenty dollars; and one deck awning, of the value of five dollars, of the goods and chattels of persons unknown. The second indictment is the same as the first; but the piracy charged is the taking of the brig Antelope or General Ramirez, and the apparel and tackle of the value of $3,000, alleged to be the property of certain subjects of the king of Spain, to the jurors unknown. The third indictment: The piracy charged is the taking of the ship or vessel, name unknown, being the property of subjects of the king of Portugal, to the jurors unknown, and her apparel of the value of $1,000.

It appeared in evidence that the defendant acted as first officer of the patriot armed vessel. the Columbia, or Arragonta. Don Simeon Metcalf, commander, sailing under the flag of the Artigan government. That he had in his possession a commission under the hand and seal of Jose Artigas, governor of the Oriental Republic, as a captain in the naval service of the said government. That there was a commission signed by Artigas on board the Arragonta. That, after the detention of the French schooner, the Arragonta was carried into Sierra Leone by the British squadron, and there discharged. That, after the capture of the Antelope. the Columbia was wrecked on the coast of Brazil, and her commission and papers lost. It further appeared in evidence that it was the practice of Artigas to furnish his commanders with copies of commissions and general instruc-

tions to govern their conduct. That these copies were generally furnished to prize masters, endorsed by the commander. Such a copy was found in the possession of the defendant, accompanied by the usual instructions of the Artigan government. That the French schooner, which was detained one night, was bound to a port of an enemy of the government of Artigas, having on board munitions of war. That upon the detention of the said schooner, the defendant, Smith, made a formal protest against the act of the commandant, Metcalf.

The evidence also ascertained that the defendant always acted within the limits and authority of the personal commission, and the copy of the commission of the Arragonta, which were found in his possession when he was taken. It also appeared that Smith was born in the United States, but had been for three or four years past an officer in the patriot service, appointed to different vessels sailing under the flag of Artigas. The Antelope, under the command of the defendant, was afterwards taken off the Florida coast by the United States cutter Dallas, and brought into the port of Savannah. The case of the defendant was considered as if all the indictments were before the jury.

The counsel for the defendant classed the cases under two heads: 1st, the detention of the French schooner; 2d, the capture of the Spanish and Portuguese vessels. Under the first class, it was urged: 1st. That the detention of the French vessel was authorized by the commission, as the evidence ascertained that this vessel was bound to an enemy's port, having on board munitions of war. That for any excess of this authority, the defendant is answerable to his own government, criminaliter, and to persons aggrieved, civiliter, in damages. That this act, being done under a commission, cannot be piracy. 2d. That admitting the act to have been unlawful and piratical, the defendant having made a formal protest against it, and thus disclaimed the act, cannot be made answerable. Under the second class: 1st. That the defendant, Smith, is a regular commissioned officer of an independent government, at war with Spain and Portugal, and therefore authorized to make captives. 2d. That the fact of his nativity cannot alter the rights derived under that commission, so far as they are essential to the defendant on these indictments; for (1) that expatriation is a natural right, which society cannot justly restrain, and which is not impaired by the failure on the part of this government to prescribe the mode in which it shall be exercised; that, in the absence of such regulations, a compliance with the municipal regulations of a foreign country, and the acquirement of the rights of citizenship there, are an expatriation as to this country; and (2) that if the defendant is still to be considered as a citizen of the United States, and that it was therefore unlawful for him to take a

commission to war against a nation with whom the United States are at peace, still such an act does not amount to piracy, because the penalty of it is prescribed by the act which renders it unlawful. (3) That if all those points are against the defendant, still if he acted bona fide, that is, within the scope of his commission, the acts imputed to him cannot amount to piracy.

THE COURT, charging the jury, considered the several points argued by the defendant's counsel, and in relation to the first act, the detention of the French schooner, recognized the principle contended for, that this detention was authorized, as the vessel had on board munitions of war, and was bound to the port of an enemy. If the act were unlawful, THE COURT said, that the defendant, by his protest, had disclaimed that act, and relieved himself from any consequences which might ensue; that to every individual who was about to commit a crime there was a locus penitentiæ, and that when such a repentant disposition appeared, no punishment would be inflicted. In relation to the commission of the defendant, from the Artigan government, and the commission of the Columbia, or Arragonta, THE COURT said that so long as the defendant acted within the limits of these commissions, in good faith, even if the papers were not in fact genuine, he could not be found guilty of piracy. That the proof of their genuineness was, under the authority of adjudged cases, sufficient at least to repel the charges of felonious intent, which is indispensable to constitute piracy; that so long as the defendant kept these as the rule of his conduct, and did not transcend the authority given by them, he was not guilty of any piratical act. The fact of the nativity of the defendant does not alter the case, for if it be unlawful in a citizen of the United States to hold such a commission as that in the possession of the defendant, a commission to war against a nation at peace with the United States, the act which makes this unlawful, prescribes the particular penalty. It cannot be piracy.

The jury returned a verdict of not guilty.